Haywood, Judge.
On the trial of this ejectment, the jury found the defendant not guilty, and a bill of exceptions was filed, from which it appears that John Elliot died intestate, in May 1789, leaving George S. Elliot, his only son and heir at law, who was born the 14th ofFebruary, 1788. A grant issued to the heirs of John Elliot, deceased, for 640 acres of land dated the 27th of April, 1793. At January sessions, 1790, of the court for Tennessee County, David Johnson and George Oldham administered on the estate of John Elliot, and returned their inventory to the next April sessions. James Elliot brought suit against the administrators, Old-ham and Johnston, in January, 1791. At which time the letters of administration to Oldham and Johnston were repealed, and an administration .was granted to Zilpha Elliot, the widow of John Elliot, deceased, and she was also appointed guardian to her infant children, George and Zebiah, and gave bond and security as guardian.
• Whether the former administrators defended the suit brought by James Elliot, does not appear by the record. The plea of plene administravit was pleaded at April, 1791. Afterwards, at July sessions, 1791, the same plea was put in, and on the trial docket was entered, “ Jury sworn say they find for the plaintiff; damages £ 163 16s. A fi.fct. issued against the goods and chattels, &c., of John Elliot, deceased, &c., reciting it to be for a debt James Elliot recovered against him. This was returned at Octo-bre sessions “ nothing found.” An alias issued in the * same form, on which was the same return. At April sessions, 1792, ordered that George Neville, Esq., be appointed guardian to George Simms Elliot, for the special purpose of receiving service of two scire faoiases : one at the instance of James Elliot against George Simms Elliot, as the heir at law of John Elliot, deceased, to show cause, if any he can, why execution should not be had of the 'real estate in his hands; the other at the instance of Robert Nelson against the said George Simms Elliot, for a like purpose; and *624 that he be vested with full powers to defend the same in behalf of the said George Elliot, heir at law. Scire facias issued, commanding, &c., to make known to George Neville, guardian of George S. Elliot, to show cause why execution should not be had of the real estate of the deceased in his hands. This was returned, made known to Cfeorge Neville ; and at July sessions, 1792, there was this entry of record : “ James Elliot v. John Elliot's heir. Judgment according to sci.fa.” In January, 1793, James M‘Car-rol (who had intermarried with the administratrix some time in 1792), by a settlement with the County Court, was authorized to retain ¿66 14s. for expenditures and disbursements during their administration, and certain persons were appointed to value and set off to him property to that amount. In October, 1793, it was ordered by the court that execution issue against the real estate of John Elliot, deceased, to satisfy the remaining part of the judgment, James Elliot against John Elliot deceased's heir; Robert Weakly v. John Elliot deceased's heir; and also Robert Nelson against John Elliot, deceased. And pursuant to order, & fieri facias issued, commanding, &c., that of the lands and tenements of John Elliot, deceased, you cause to be made the sum of ¿677 16s., being the balance due on a judgment obtained by James Elliot against Elliot's administrators. The execution was levied upon the land now in dispute, and sold by the sheriff to * James M‘Carrol in January, 1793, for the sum of ¿610. The sheriff executed a deed to M‘Carrol in 1804, who took possession in 1806, and has continued in possession ever since. On the 22d September, 1812, he sold and conveyed 190 acres to Blackman, who afterwards conveyed his part to the defendant, Hicks. They have been in possession ever since the dates of their purchases. On the 2d of January, 1816, George Simms Elliot sold and executed a deed to Patrick Darby, the lessor of the plaintiff, for the premises in question. George S. Elliot arrived at full age the 14th of February, 1809. The original writ in this cause was signed, attested by the clerk on the 12th of February, 1816, and was delivered to the lessor of the plaintiff, and was by him filed upon that day, and was indorsed as having issued. But security for the prosecution of the suit was not given till the 4th of March following. The writ was put into the hands of the sheriff, and was executed on the 11th of April. It was also proved *625 on the trial that H. F. Bell, Robert Prince, and James Stuart were chosen by M‘Carrol as administrator and guardian, and by George and Zebia Elliot, heirs and representatives, to adjust and determine a difference that had arisen between them, in which the heirs claimed damages in consequence of the alleged maladministration of M‘Carrol. And they awarded that M‘Carrol should pay $400, and convey 320 acres of land on White’s Creek, for which he gave his bonds, and afterwards paid the money and made the deed. The arbitration was considered by the arbitrators, and by all parties, as extending to the whole estate, real and personal; but it does not appear that there was any bond of submission. All parties seemed satisfied with the decision, and the representatives gave M‘Car-rol a receipt, which was considered a final discharge from all further responsibility (but this receipt hath not been produced). All parties as well as the arbitrators seemed to consider that the legal title to the *land was in M‘Carrol, by the judgment, execution, and sale, and that there was no necessity of awarding a release of title, nor was any made. And the arbitrators say, if they had believed at that time that the legal title was in the heir, they would not have awarded him to release it for that sum.
These are the facts, and it will save time at once to inquire whether, admitting a judgment given against one not served with process be void, a fieri facias issued upon it and not superseded, but the sheriff proceeds to execute it by sale, shall be itself so absolutely void as not to protect the sheriff or vendee; for I think it must be admitted that if the sheriff be protected, the vendee will be also. It would indeed be most unreasonable that the sheriff, commanded by a solemn writ issuing from a court, upon a subject within its cognizance, should, for executing that writ, be punished as a trespasser, because the plaintiff had caused an irregular judgment to be entered as the foundation of the execution, in which the sheriff neither had nor could have the least concern. It would be well enough to make the plaintiff answerable, but to make the sheriff so, all the world would exclaim against as most impolitic and unjust. And is there any reason which would exempt the sheriff, that would not equally operate to exempt the vendee ? To be sure he is not obliged to purchase, as the sheriff is to execute the writ. But is he not equally justifiable in paying respect and giving credence to process issuing from a court having power to issue it on *626 proper occasions? If every one must be satisfied that the judgment is not vacatable for irregularity before he dare purchase, who will be so imprudent as ever to purchase at an execution sale ? Or if any one should purchase, will he be so imprudent as to give the value of the thing sold ? Will he not take care to be ¡indemnified against any contingency to which his purchase shall be exposed by the invalidity of the judgment ? The defendant may cause * such judgment to be set aside, upon motion by the court in which it is entered. If he do so before th.efi.fa. is executed, he prevents the mischief of a seizure and sale. But if he do not procure it to be suspended in time, after he has suffered by a seizure and sale, he must look for redress to the plaintiff; who, upon reversal, will be obliged to restore to him all that he has lost, to be assessed by a jury in an action on the case, if he choose to bring one, or by a writ of restitution of the moneys raised by. a sale of his property, if he choose to be satisfied, with it. 4 Mod. 161; Salk. 587, 588. It is of no use, then, after afi.fa. is executed, for the defendant to say to the vendee, the fi. fa. under which you purchased was founded upon a void judgment. It is wholly useless to inquire whether a judgment be void for want of process duly served. 'This cannot affect the vendee, however available it may be made against the plaintiff. It follows that a judgment need not be shown by a ven-dee, though it must by the plaintiff, if he be sued. Vide 5 Com. Dig. “ Pleader,”. 3, B, 7; 4 Massachusetts, 612; 2 Caines, 255, 259. Vide also 12 Mod. 179; Ray. 73.
A judgment need not be shown by the vendee in the case of personals. 12 Mod. 179; Ray 73. What is there in the nature of the thing to make it so in case of realty sold by fi. fa. ? If after a judgment which binds the lands, the defendant sells, and then the execution issue, and the sheriff sells the same lands to another; the latter purchaser ought then to show the judgment, in order that the fi. fa. by relation, and his deed under it, may overreach the intermediate sale. But in no other case do I conceive the judgment to be necessary; unless where the property is conveyed in fraud of creditors, and sold by the sheriff under an execution against the vendor or donor. If a judgment were indispensable to the validity of a sale, then in case of reversal, after which no judgment could be produced, the sale would be void, than which nothing *is more untrue or more monstrous. For who would recompense the vendee ? Will the sheriff do it ? *627 He will be justified under the authority of his writ. Will the ven-dee sue the plaintiff? He will say to the vendee, I was no party to the judgment between you and the defendant to my action. My judgment against him is in full force, not vacated nor reversed, and never will be so ; for he, having recovered against you, cannot move to set aside the judgment. He is satisfied. He is not entitled to any restitution against me. Will he sue the defendant ? He will say, the judgment, between the plaintiff and myself is in full force ; and moreover, he will say, you purchased without my request, and even against my wishes ; your money has not come into my hands. Must he lose his money then that he paid to the sheriff, and he to the plaintiff, and give up the property purchased to the defendant, after paying his debt to plaintiff, and sit down under the loss ? Far better would it be, and more honest, not to have any execution at all, than one drawing such consequences in its train; better not act all than to circumvent a deluded man by means of his confidence in judicial rectitude. The anonymous case in Salk. 588, evidently speaks of a restitution of money raised by a sale before the judgment set aside for irregularity; not a restitution of the property taken and sold. And if so, what good .will it do to show a judgment ? For if void for irregularity, the sale is good ; if not void, the sale is good. Can it be supposed that the vendee is the person meant in this case to be punished by attachment for not obeying the rule for restitution ? Will he who is not a party to the proceeding in which the judgment is set aside, be ordered to make restitution when the plaintiff, who is a party, and has the money raised by the sale, is passed over and left in the undisturbed possession of the money, whilst at the same time the vendee, a total stranger, is punished for the contempt ? I think it will be conceded, after * reflection, that the plaintiff is the person to be punished in case of non-restitution ; and if so, the authority of this decides the question. Why is he proceeded against in this summary way, and not by sci. fa ? Because he has behaved amiss, and . has been called on to defend his conduct on the motion for setting aside the judgment. Would this reasoning apply to the vendee, and show that he too could be proceeded against to take away his property, upon a mere rule issued to him to give it up without further ceremony or resistance ? Then he is not the person to be punished, but the plaintiff. Against him, *628 and not against the vendee, is restitution to be made in case of setting a judgment aside for irregularity after the fi.fa. is executed. The vendee is safe whether the judgment be or not set aside. If the judgment must be produced, and must appear to be one not void for irregularity, or for not serving process on the defendant, then suppose this case: the sheriff has returned executed ,- but the defendant in his action against the vendee offers to prove that the return of the sheriff was false, and that the defendant, at the time of the supposed service, and long before and afterwards, was in France. Must this allegation be tried, and the judgment be declared void as between the defendant and the vendee, whilst it remains in force as between the plaintiff and the defendant ? Or will this judgment remaining unrescinded by the court that rendered it, be considered as in force by all other courts where it may incidentally be questioned ? If the latter, then how can the evidence of a false return by the sheriff be at all material ? That should have been shown a ‘priori to the court in which the judgment is. But if the false return shall be inquired into, then as between the plaintiff and defendant that return will remain conclusive; but as between the defendant and innocent vendee it has no conclusiveness at all. And the damages for a false return will fall, not on the sheriff * who did the wrong, but on the vendee, who is wholly innocent of all immorality. This is the inevitable consequence of saying there must be a judgment produced by the vendee, which upon examination must appear to be one not void for irregularity or for not serving of the process. If it be conceded that the falsity of the sheriff’s return shall not be established in this collateral way, then credence must be given to his return; and if so much reliance is placed upon his correctness, why not the same reliance upon the correctness of the clerk, that he will not issue an execution when not authorized to do so by the judgment ? He too is sworn as well as the sheriff, given security for the performance of his duties, and may be sued, indicted, and removed from office for such an act. What more security can be had in any case ? I cannot believe, upon principle, that it is requisite to produce a judgment not void for these causes, except in such instances as are before enumerated. I well know, however, that the practice hath been in this State to produce the judgment, to show, as some of the cases say, that the clerk hath not issued the execution of his own head, *629 not for the purpose of showing whether it be void or not. I have no reluctance to the continuance of the practice, as my brethren, the other judges of this court, seem strongly induced to adhere to it. It will perhaps be time enough to alter it when some plaintiff who hath recovered and received a large sum from the vendee, and shall have gone to Europe or to Asia, and at the suit of the defendant against the vendee for the property purchased, the latter, not able to produce a regular judgment, shall be compelléd to resign the same to the defendant, after paying for him the debt which he owed to the plaintiff, and be found incapable to obtain for himself any redress or relief. The actual occurrence of such a case will strike the observer with far more force than the contemplation of it as barely possible, and never likely really to turn up.
* But, nevertheless, I will excuse myself from considering whether this be a void judgment or not, for not being founded on process duly served on the defendant. Without doing this I can consider of the execution, and of the authority communicated by it to sell the property in question ; for if that were such as not to give such authority, then it is no fault of the law, but of the vendee himself, to purchase that which the fi. fa. did not order to be sold. Look, therefore, to the fi. fa., and see whether it did or not authorize the sale of the property in question. If it did not, there is no hardship at all, nor any imputation upon the law, if he shall be compelled to relinquish it to the former owner. The sci.fa. issued from April term, 1792, reciting a judgment obtained by James Elliot against John Elliot. It was against George Neville, guardian of George S. Elliot, heir of John Elliot, to show cause, if any he had, why execution should not be had of the real estate of said deceased, in his hands. Upon which this entry was made, “ Judgment according to sci.fa.' Afi.fa. issued, commanding the sheriff that of the lands and tenements of John Elliot, deceased, you cause to be made the sum, &e., the balance due upon a judgment against the said John Elliot's administrators, &c. What does this mean, “ the lands of John Elliot, deceased ? ” Here is an execution against the property of a dead man ; he cannot have lands, they belong to his heir or devisee. Does it mean lands which he had • in his lifetime, and sold or otherwise disposed of ? It includes these as well as it does the lands descended or devised. Does it mean the lands he had at his death, or those which he had in his lifetime ? The term *630 is so indefinite that it does not point out the lands descended to the heir. And if it did extend to them, does it mean lands the heir had, and parted with before the date of the sci.fa., or only those which remained undisposed of? .If an execution issue against a testator in his lifetime, and he * die before the return day, it may be levied upon his personalty. B. 3, P. W. 400. But if after his death such execution issue, it is wholly void, for the personal estate then belongs to the executors, and cannot be reached by any authority to sell the goods of the testator. Vide Salk. 319; 5 Mod. 376. So here, a like execution to teste, after the death of the ancestor, cannot affect lands descended to the heir and which have become Ms lands before the execution issues. In England it is every day’s practice, if an obligor die in the vacation, to enter up judgment by virtue of a power given by the obligor as of the precedent term at which term he was alive, and to issue execution against his goods, &c. But if a term intervene, such execution cannot issue ; because then the teste of the execution must be of a term subsequent to his death, and cannot affect the goods, which have vested in the executor. 6 Term, 368; 2 L. Ray. 769, 849; 2 Str. 882, 1081. So neither can an execution against his lands affect those which have gone by descent into the hands of his heirs. It is not stated in this execution who was the defendant; whether the heir, or Neville, the special guardian, or who else ; but it says the debt to be satisfied is “ the balance of a judgment obtained against the administrators by James Elliot.” I am of opinion it communicated no power to the sheriff to sell the lands in question, and consequently that the sale is void. This leads directly to the act of limitations. The land was sold the 18th of January, 1794. A deed was made to M‘Carrol the 12th of April, 1804. He conveyed to Russel, the defendant, on the 22d of September, 1812, and to John Blackman, on the same day, another part. In 1806, M‘Carrol took possession ; and on the 14th of February, 1816, George Simms Elliot come of age. If the lar is to be formed by the lapse of seven years after coming of age, which was in 1809, then the plaintiff is not barred, for the writ was issued from the office, * filled up, and indorsed two days before the seven years were completed. The act of 1794, ch. 1, § 9, directs the clerk or attorney to mark thereon the day it issued; to the end, it is presumed, that the time mentioned in the act of limitations *631 may be counted to that day. The time marked, therefore, is to be taken as the point to which to compute, unless that- be proved not to be the true time. The clerk may issue process upon his own responsibility without taking any security ; when he does so, the process is not therefore void, though he be liable to a penalty. That penalty is enough to secure the defendant. The law, therefore, avoided saying that the process should be nullified. It is good notwithstanding, and is deemed to have issued from the time it is marked. May not the plaintiff the next minute put it into the hands of the sheriff, and will it not justify the sheriff for all that he may do in pursuance of it ? But from what point in this case does the computation commence ? From the time the heir was ousted ? And when was that ? From the time that a stranger took possession and ousted his guardian, or from the time that the guardian ousted himself and could have been sued by the next friend as a tortious deforceor, and had done some unequivocal act to demonstrate that he held for himself adversely to the ward ? A resignation of the guardianship, and causing another .guardian to be appointed, and keeping the possession from him adversely by preventing his entry, and denying the title of the ward, might amount to such an act. See 2 Leonard, 189; Littleton, § 57; 3 Ba. Ab. 418; Cro. J. 88; 1 Johnston’s Cases, 213; 10 Johnston, 435; 3 Wilson, 516; 3 Cruise, 411; Dy. 291; 2 Leon. 147; 1 Sullivan, 240; 1 Plow. 293; 1 Leon. 232; 1 R. Ab. 659; 3 Atk. 120; 1 P. W. 721; 2 Leon. 147; 1 Leon. 322. It is true, the guardian may purchase as well as any other at an execution sale against the ward’s lands ; but if he be disposed to take possession distinct from that of the * heir’s possession, he must declare it by plain and distinct acts, not referable to any other intention. An action cannot accrue to the ward otherwise than to make the guardian account, so long as he continues guardian ; for in that character his possession embraces the land in question, and is a possession for the heir.- If the guardian intends otherwise, that is secretly known to himself alone, and cannot be known to others but by some open act, demonstrative of his intention. Otherwise, by purchasing on a bad title, adverse to that of the heir, he could, in spite of all opposition that the friends of the ward could make, acquire a good title t.o himself at the expense of the ward. If sued before the completion of the seven years, he would say, I as guardian am entitled to this possession, as *632 well as for myself. I have two possessions, and one of them is certainly sufficient to protect me. After the seven years he would say, I will now claim by virtue of the possession under my own title. Let him give up the guardianship and claim for himself, become subject to the heir’s action; and then it may be said he claims only for himself. And then it will follow that the possession which he keeps as guardian cannot by and by be used in destruction of the heir’s title ; than which nothing can be more compatible with sound principles. Shall the law encourage the protector to become the destroyer ? And him to be the usurper of the infant’s possession who was intrusted to keep it against all the world, and to deliver it to him unimpaired in due season ? Who is safe where such infidelity receives countenance ? And under such a system, who can say that the lamb is not committed to the wolf ? I am of opinion that the time in this case began to run from the death of the mother, when the guardianship ended; and if that was after the coming of the heir to age, then from the time of his coming to the age of 21 years.
* As to the arbitration, it is believed to be an estoppel, where it is by writing under seal, and directly comprehends the subject matter of the ejectment in which it is afterwards used. In such a case as the present, it deserves no favor, and should be deemed exclusive of objects not clearly included. Settlements with young heirs just after coming of age, before they have acquired information enough of their affairs to enable them to act with discretion, are much discountenanced in equity, and oftentimes disallowed (1 Vesey, 381); and for the same reason ought not to be encouraged in courts of law. If the lessor of the plaintiff be not estopped, all will admit that an award cannot transfer the freehold. It is further, to be remarked, that in this country the ejectment is for the recovery of the possession and the right of property. The authorities referred to, 3 East, 16, and others, do not say that an award can estop in actions for the freehold on mere right. The aAvard, I think, is not an obstacle to the plaintiff’s recovery, as this case is circumstanced.
I wish to be understood, that the deed to M‘Carrol, though founded on a void sale, and therefore not derived regularly under the grant in the name of Elliot, the ancestor, is yet as capable of confirmation by lapse of time under the act of limitations, as any *633 other invalid deed. The ground I go upon is, that there' is not in this case time enough for its confirmation, there not having been seven years’ advérse possession before the commencement of the action; the time ought to be counted from the first act which unequivocally announced a possession adverse to the heir, and that in the present case may be not till after the lands were sold to Blackmore and the other defendant. When a sale is made of lands in this country by the sheriff, like that of a leasehold in England, the possession is not altered, but it must be sued for and recovered by the purchaser, or otherwise legally acquired. It remains * as it was at the time of the sale, until some clear act be done to change it in favor of the purchaser.
With respect to the other matters discussed in this cause, there is no necessity,for instituting any minute investigation. A verdict in 1791 and 1792, when the old mode of doing business prevailed, may be taken for a judgment, and sales made under an execution issued upon it be deemed valid. Also a judgment upon the trial docket, entered up thus, “judgment according to sci.fa.” will be as effectual as one entered with the same formality with which judgments are now entered. Infinite mischief would follow the disal-lowance of them and of the proceedings upon them. I believe that in case of a sci. fa. against lands in the hands of an infant heir, the court have no power to appoint a special guardian where there is a general one regularly appointed, who has given bond and performed the other requisites presented by law, and that a judgment founded upon such special appointment is reversible. I believe also, that such sci.fa. ought to be founded upon the plea of fully administered found for the executor or administrator, or that the judgment founded upon it is reversible; and though as between a plaintiff and administrator whose letters are repealed after the action commenced against him, that if he will not plead the repeal he cannot afterwards avail himself, yet as between the plaintiff and him such judgment ought to be against the real administrator ; otherwise, how can he be in court, to contest with the heir concerning the plea of fully administered when the heir is brought in by sci. fa. ? Before there can be an inquiry respecting the personal estate and its sufficiency, the real administrator must be present; and how is that to be brought about unless he be retained in court till the .heir came in ? Can he be brought in by sci. fa. or other process ? None is given by the act, *634 for such a case was not supposed. In this case it was not understood at the time * of the judgment against the administrator, whether the latter or the former were- considered defendants, or that the judgment was, upon the plea of fully administered, found for the defendant; for then the judgment would have been to recover the debt, but not out of the assets, there being none in the hands of the administrator, because he had discharged himself of assets, but to be levied of the real estate of the heir, if the heir had real assets. This perhaps is the proper form in such cases. It is a new one introduced by the act of 1784, ch. 11; for at the common law the defendant on administration, upon the plea of fully administered. found for him, would have been discharged by an este inde fine die, and judgment would have been given against the plaintiff but now judgment is to be entered for the plaintiff, to be levied, the act does not say how, but the heir is to show cause why execution should not issue against the real estate for the amount of such judgment, &c. Execution of what-? I suppose of the judgment signed by the plaintiff. The judgment upon the sci. fa., is, that the plaintiff' have execution of the judgment against the real estate. In the present case two writs of sei. fa. issued, which could only be for the purpose of procuring satisfaction out of the personal estate. It was therefore considered that the personal estate in the hands of the administrator was liable. All this preceded the sei. fa. The judgment upon it is reversible; for it subjected the real estate when the keeper of the personal found the real administrator had not been before the court by anything distinctly asserted upon this record. Judgment according to sei. fa., means according to the statements in the sei. fa., and taking them all to be true. The sei. fa.-in this case recited a judgment by James Elliot against John Elliot, deceased, and stated the object to be, to have execution of the real estate óf the deceased in the hands of
Neville, guardian of George S. Elliot, heir of John Elliot. Judgment then was against Neville, * guardian of George S. Elliot, heir of John, of the lands in the hands of Neville. And these lands were not in his hands but in the hands of the general guardian. Moreover, this judgment was founded upon one against John Elliot, deceased, passing over the personal estate in the hands of the administrator; but this is not a yoid judgment. Judgments may be void for want of jurisdiction in the court, of which *635 all the world may take advantage, or for irregularity, of which the party injured only can take advantage, which he must do in time to preyent injustice to third persons. If it could be established that the judgment against the real estate in the case before us was void for the latter cause, it would not vitiate the sale made under an execution issued upon it. The defendant ought to have caused it to be superseded before a sale was made, and having not done so, he must now look to the plaintiff, and get reimbursement from him; but indeed it is useless to dwell upon these several points, for though they have been brought forward in the argument of this cause, yet they do not enter into the merits thereof, nor form any material part of it.
I am of opinion that the judgment ought to be reversed, and the cause to be remanded to the Circuit Court, to be tried de novo.
RoaNE, Judge.
The decisions in this State have uniformly, as I believe, established the principle, that he who claims by deed from a sheriff lands sold by fi. fa., must produce the record of the judgment by virtue of which the fi. fa. issued ; and I am disposed to adhere to these precedents, although in some instances the reasons for requiring such record are not very satisfactory. When produced, it ought to appear that the court had authority to act in that case, and that the defendant was served with process either actually or constructively. *If both these requisites appear, and also that the execution pursued the judgment, then the purchaser will be protected, though the judgment should be erroneous. If the court had not jurisdiction over the subject, or if the defendant were not served with process either actually or constructively, then he cannot be affected by the sale. The judgment as to him is a nullity. The court must determine so, on production of the record, on trial of a collateral issue either in law or in equity, between the former proprietor and vendee at sheriff’s sale. But the court cannot in these suits become a court of errors, and reverse judgment, or refuse to give it all the effect which by law it ought to have till reversal. Even a reversal, when it shall take place upon a writ of error after a sale, will not affect the purchaser. Inconveniences, I know, may follow a rigid adherence to this opinion. Innocent purchasers at sheriff sales may sometimes be involved in difficulties. But I must adhere to precedents till some other course be discovered, more exempt from inconveniences and more consonant to legal principles.
*636 The circuit judge gave wrong directions concerning the award ; for that reason the judgment must be reversed, and the cause remanded for trial to the Circuit Court.
The judgment reversed and the cause remanded accordingly.
Note. The later decisions in regard to sales under void judgments, all sustain the position of Judge Whyte. See Mitchell v. Lipe, 8 Yer. 179; Siglar v. Malang, 3 Hum. 16; Sandeford v. Hess, 2 Head, 680; Etheridge v. Edwars, 1 Swan, 426; Hodges v. Wharton, 7 Yer. 125. As to death after teste, McMahon v. Glasscock, 5 Yer. 304; Gwin v. Latimer, 4 Yer. 22; Black v. Planters’ Bank, 4 Hum. 367; Preston v. Surgoine, Peck, 72. See King’s Digest, 5477, 5494, 6315 et seq.